Number 13-3771, American Services, Inc. v. Iouri, Iousoupov Thank you. Counsels, would you approach and identify yourselves, please? Mr. Scott, I'm the Chief of the Defendant Appellate. Iouri, Iousoupov Good morning, Your Honors. I'm Alvin Becker. I'm here for American Service. We're the appellee. I would hope to complete my argument in 10 to 12 minutes. All right. And Mr. Blumenstein, would you like to reserve some time for rebuttal? That's fine. All right. Thank you very much. And you may begin whenever you're ready, sir. Let's have 15 minutes aside, and we'll give you five. We're looking for an order that reverses the trial court's summary judgment order in favor of American Service Insurance Company against Iouri Iousoupov in an order that further reforms the subject American Service insurance policy to include $500,000 in uninsured and underinsured motorist coverage. Let me ask you a question. Are you appealing the interpretation of this policy, or are you saying it's ambiguous, or both? I'm saying it's ambiguous, the policy, this election 100%. Am I appealing the interpretation? I'm not sure how to answer that. I believe that I am. I believe that we contend the trial court's opinion is in error. Okay. Tell us how it's ambiguous. It's ambiguous in one very important manner. The election is entitled uninsured motorist bodily injury coverage. It then proceeds in its text to have a description or definition of uninsured motorist coverage. It then, without a period, perhaps there's a comma, says or, and it proceeds to launch into what is purportedly a description of underinsured motorist coverage. Now, it's titled uninsured motorist coverage. It launches into a description of both things. Uninsured motorist coverage is uninsured motorist coverage. Uninsured motorist coverage cannot be both uninsured motorist coverage, where there's no insurance, or underinsured motorist coverage, where there's insufficient liability insurance. On its face, this is an ambiguous election form. That's one way. I mean, why is that ambiguous when it says forth one is underinsured and the other is uninsured? If perhaps the form had been entitled uninsured motorist, you know, or underinsured motorist, or it had been entitled uninsured motorist and underinsured motorist, perhaps it would cure it. You know, we know the coverages are combined. Well, the title is one thing, and then the policy provisions are something else, aren't they? That's correct. I still want to see how it's ambiguous. Given the fact that the statute creates this coverage, it's clearly an important source of consumer protection. It didn't exist in common law. Carriers weren't writing in our legislature, said we need to have this coverage. We know the statute's been amended somewhat. There's the requirement of an offer, which the Cloninger Supreme Court said these are the elements of the offer. I would note here that in the election form, the carrier talks about, well, they don't talk about, they use the term offer, and they contest that there is no requirement to make an offer, but ASI puts their offer into issue by using the term offer in their election form. If I may, do we have a blowup of the form here? Feel free, counsel. There is this verbiage, understanding this offer and the rates shown below. Of course, the rates are not shown below. This is another source of ambiguity. This form was taken by American Service back in the day by Paul Patel, who was a man that was working for ASI. It was back in the day he had it with the old statute. ASI chose, they elected to take this form, not alter it with the new statute, not alter it with the new case law. They put the offer into issue. Thus, I would submit that maybe the Cloninger test doesn't strictly apply, but they're telling the insurer, and they're telling the court, and they're supposed to comply with the law, that they made an offer. We don't know what the offer is. Well, wasn't there testimony from the owner of the cab company that it was explained to her that each driver could get increased coverage if they wanted it? There was testimony. I think the inference is that is not the truth. I think it was probably her understanding. And I would say that – If you say it wasn't the truth, did your client file an affidavit saying that no offer was ever made to him? My client did not. We did not have such a thing. But I would submit that this policy insures car service insurance company. The notion that each of the individual drivers can alter the amount of uninsured or underinsured motorist coverage, the only place that's in the record is that Alina Hojeva, and there's no record to substantiate it, say that that can be true. That policy had the 500 and the 2040. It doesn't vary by the individual driver. Car service insurance company may have their agreements with the driver about how much they're charged per week for the cab or whatever, but this notion that each driver could elect or reject, I would submit that that is not borne by the facts. It's not in the record. It's not true. Well, I thought she testified specifically that that was done. There's no doubt. Okay. There's no doubt. Well, if she testified to that, then on a motion for summary judgment, if there's competent evidence supporting a fact and there's no contrary affidavit or other evidence to contradict, then that fact is assumed as true for purposes of review of a summary judgment motion. And there's legions of cases that say that. You have to come forward or present something to contradict what she said when she said each driver was offered whether or not they wished to have more insurance, or rather uninsured or underinsured, and they declined. And she said a couple of times, I don't know if it was her or someone else, a couple of times there was two drivers who said they wanted it and then about within two weeks or two months they said they would not want to pay that extra premium for the extra coverage. So when that's in the record and there's no contrary affidavit or other contrary evidence on a motion for summary judgment, we do take that as true. Your Honor, is it not also true that I did question her specifically, are there records on this, any evidence of this other than you saying that? There is none. The inferences are to be construed against them in our favor. And there is no records on that. And I would submit also the logic and the facts would suggest that I understand Your Honor's position that it's unrebutted. I would just say that the credibility of that fact, that testimony, is subject to question. I think the policy says it's cab service company. There's no alteration in between each of the individual drivers. See, the problem that you have is this. On a motion for summary judgment, you see, the question is, is there a question of fact, right? When the lady says that the drivers were given the opportunity to increase the coverage and you say, well, you know, that's not true, well, you have to file an affidavit to create the issue and you didn't do it. That's the problem. See, that's what summary judgment is all about. I hear you, Your Honor. I understand that. My position is that that fact, that contention, that piece of evidence is so implausible. Well, wasn't there another bit of evidence about ASI having issued 967 policies to cab companies and that I think all but two were, do I have the numbers wrong? No, I think it was zero. It was two of the drivers for cab service that took it. Right. It's a general rule. They don't want to pay any more than they have to, so they don't. So they reject the offers or the requirement that the insurance company provide them information regarding uninsured and underinsured. It's true. Your big argument is that this policy is ambiguous. Right, and the fact that nobody got it, I would say they would support my argument that it wasn't adequately described and explained. This is small dollar cost coverage. Bruce Child talked about it. It's big risk. The premiums are tiny. The risk is huge. But a $600 premium for six months for anyone, you know, just trying to scrounge a living out of the cab company business, that's a big premium. So there is some sense to the idea that it's often rejected. And, you know, we have testimony that in that one instance, 967, you know. People try to say that. We usually use the term ambiguous as a term of art. It has a legal meaning, and that generally is that reasonable people or a reasonable person can derive two separate meanings from the same provision. Is that the way we should be analyzing this in terms of ambiguity? I believe so. So what are the two different meanings that a reasonable person would derive from the terms of this waiver that you think is in question here? What are those two different meanings that a reasonable person could gather? That uninsured motorist coverage is for situations where the other driver is not insured. That uninsured motorist coverage is for situations where there's not adequate insurance or not adequate competency for the injury sustained. The Norris decision, you know, it does use the Cloninger test somewhat, but the Lee court, Supreme Court, said that the statute is strictly construed. And these other decisions that are filtered around are not exactly on point here. Do talk about the burden on the insurer. Yes, DeGrant said that they just have to, the statute says you have to advise of the coverage and describe the coverage. It has to be accurate. The Norris case, I suggest, is an indication of how this court has looked at the statute before and what's required. In Norris, the insured defendant was a sophisticated trucking company. He testified, I understood the coverage, but, you know, I didn't want it. The court said it doesn't matter what the insured understands. The focus is on what the insurance company did. And there in Norris, the forms, you may recall, talked about the minimum limits being 30 as opposed to 20. The risk manager knew that 20 was the minimum. The court said it doesn't care. The carrier has to comply with the statute. What about this Padgick v. Old Republic case? How do you distinguish that or what do you suggest we say, that that was wrongly decided? Oh, no, Your Honor, it was properly decided. I think the issue there was, I would say first of all, it seemed like the battle there was whether or not Cloninger was viable. That seems to me like that's the upshot of that decision. And the Padgick decision said no, DeGrant could arrest him. Even though there's been opinions, Neila, Isaacson, that say there's still some, or suggest there's viability to Cloninger. But here's how I would distinguish Padgick. Padgick, again, a sophisticated insured that was given a three-ring binder describing uninsured motorist coverage, showing the different rates, what the cost would be. It's a far cry from this. And I want to circle back on your point about the drivers supposedly having this ability to increase their limits. How could that be? They're not parties to the policy. Could they have, is car service, is not an insurance company. They can't provide underinsured motorist coverage or uninsured motorist coverage. And there's nothing by way of documentation or credible evidence that American Service is going to alter that underinsured coverage per driver. Yes, she said it. Yes, it's unrebutted. Our point is that there's no plausibility or credibility to that testimony. And I would say also on Padgick, Your Honor, that there was, at the end of the opinion, a addressing of arguments made by the insured that the form was unintelligible or ambiguous, confusing. The appellate court in its opinion said, well, you didn't raise that in the trial court. You're not raising it here in the reply for the first time, so we're not going to consider it. I think that we've had that throughout in this case, the argument from the trial court up to this panel. I'm not sure I get this one point about being unable to not take the election. I mean, you're saying that there's a way to avoid summary judgment, even in the face of testimony, because it's just simply unbelievable. But, you know, let's say that, I don't want to say, is it Hojava, Elena? Let's say Elena, you know, is concerned about the potential liability of her drivers and she, or possibly it being passed back to her, that she decides, well, you know what? I want all my drivers to have, you know, a higher limit. She could just not sign this and, you know, fill out the other side of the form and pick a rate for a higher limit. What's to say that she couldn't? Well, she could, but, you know. But it's unlikely because they're all trying to save money, right? Everybody wants to save money. But is it really impossible? It's certainly possible if you have, you know, an altruistic owner and she wants to make sure everybody has lots of coverage. But the point is that she had, according to this, she had that option, right? She didn't have the option. It was like us, you know, we were in Germany and we don't speak German. We sit down at a German restaurant. What is this menu? We don't understand it. Yeah, we could say, I'll have this. But if we don't speak German, we don't know what we're choosing. Choice implies knowledge and information adequate to make an informed decision. It couldn't have happened here. And it doesn't matter what she says, according to Norris. It's what the company did. The Supreme Court says it's strict compliance. This is important coverage. My guy is at the total mercy of what half-service company does with regard to this important coverage. And there's, yes, the Kloninger requirements is somewhat washed away. But the description, the description, it has to be accurate. And the explanation has to be truthful. And that's really what it's all about, the statutory compliance. And I understand the circumstances are, you know, maybe she could have or should have. But I believe that the law is saying this is important. The carriers have, and particularly here, this is a long-time carrier, they're resourced, you know. And this lady just started a campaign. She couldn't even describe on her own personal policy what uninsured motorist coverage is, whether she had it under insured motorist coverage. She didn't understand it. All right. Why don't you go ahead and wrap up, counsel. Okay. The trial court, in its opinion, in referencing the election forum said that it was not a paradigm of clarity. Summary judgment requires that the right summary judgment be clear and free from doubt. And did the insured say she understood it? Yes. That's not enough. The statute requires a certain standard be met. And it can't be watered down. It can't be met with half measures. And we contend that the trial court's order granted summary judgment is properly reversed and that the policy be reformed to provide $500,000 in  Thank you, counsel. Mr. Becker? I think the first question. Before you start. Okay. Before you start. Let's go into this election forum that is called uninsured motorist election. There's nothing there about underinsured motorist coverage. It says uninsured motorist. I'm not getting the question, sir. Okay. In the election forum. He argues that it doesn't, it shows uninsured motorist. I understand the question now. I'm sorry. Recall, Your Honors, that the free to grand, the statute, and that's what he's talking about. He's hanging his hat on free to grand decisional law and the free to grand statute, and that's respectfully, that's where I think he's going astray. So if you'll permit me to take about 60 or 70 seconds to go over that. Okay. First, under the prior statute, the free to grand law is modified by the Supreme Court decision in Cloninger. You had to make an offer. You no longer make an offer, and the offer had to be done in a reasonably commercial manner. And what you did under the old statute was you offered uninsured motorist and you offered underinsured motorist. The 1990 statute put an end to that. It put an end to that respectfully because there no longer is an offer of underinsured motorist. The statute in no uncertain terms says you provide the applicant, and I repeat that word, the applicant, a brief description of the coverage and the opportunity to reject the amount of that coverage down to the minimum mandatory uninsured motorist coverage of 2040. And that's exactly what happened in this case. That is exactly what happened in this case. The testimony of both the applicant and the producer is uncontradicted. Counsel would like to make an argument that it is inherently improbable. It is not inherently improbable for the very good reason that Justice McBride has suggested, and that is it's a function of cost. We don't want to pay for that. It is absolutely the only conclusion one could come to is that the owner of the cab company passes the insurance on to the drivers. And it's just that simple. They're motivated by cost. It would have been very simple for Elena to have said, I didn't understand this. I didn't get it. I don't get it. But she said the opposite. She went over every page of the application, and I understood it. And I rejected it. And she gave the reason why she rejected it. It was motivated by cost. And, frankly, in the society we live in, that's an important function in the selection of insurance. Justice Gordon asked an opening question to my opponent, and that is, are you contending that both the application and the policy were ambiguous? That's news to me with regard to the policy. No such argument was ever made in the circuit court that there's any ambiguity in the policy. And I don't find that there's any argument made in any writing that he's filed in this court, if he did make such a writing, with regard to the policy reform itself. With one exception, the very fine decisions that he cites, to your honors, happen to be pre-degrand cases. And pre-degrand cases no longer carry the day. They don't carry the day because the statute has been fundamentally changed. In my able opponent's reply brief, he raises, and I believe for the first time, the insurer's obligation with respect to the word here is important. Remember, the statute talks about advising the right to reject and advising of a brief description of the coverage. He takes the word advise respectfully, which means to inform, and he then changes the word to advice. And he does that in page eight of his reply brief. It is not the obligation of the insurance company to give advice. They don't give advice. No, they give advice of the right to reject. That is correct. And it's also important because it is the dominant and pervasive theme, both from what I've heard in the argument here today and in his reply brief, that the obligation of the insurer is, if it's not fiduciary, and he uses the word, it's fiduciary in nature. Well, if it's fiduciary or fiduciary in nature, your honors don't need me to tell you what limitations are imposed on a fiduciary in a transaction with the subject of the fiduciary relationship. Nobody can ever get anything done. Because I can't feather my own nest, I have to feather your nest. That's not what the statute says. Don't you think under the statute that there can at least be a claim that the brief description that is given in a particular case is ambiguous to the extent that it's not a brief explanation? Isn't that really his argument? That's his primary argument on appeal. To answer your first question clearly. Could such a description be either unacceptable or ambiguous? I'm not bothered by either of those words. But the answer here is a brief description is it provides you with protection up to the selected limit for injuries in an accident caused by another motorist who is not covered by any bodily injury insurance. That's what you're supposed to tell them. That's what an uninsured motorist is. Respectfully, please don't think I'm being sarcastic, you wouldn't put an explanation in and that covers the elements as contained in IPI instruction number 50 and these are the elements of damage. Lay people have a difficult enough time as it is to read insurance policies. To put that in there would be over-advising them of the nature of the coverage. Would you agree that the title to the form could be clear, including a reference to underinsured motorist coverage? The description is provided of the actual protection. One, I agree with the circuit court judge that it is not a paradigm of clarity. However, notice the next sentence, he says, but it is unambiguous. Respectfully, I agree with that observation, not because I'm just an advocate, because it is unambiguous. It is unambiguous. This is what uninsured motorist coverage is. There is no special responsibility.  You know, it's the legislature who sets the standards. They could have put something else in. They didn't. They could have done something about codifying Chroninger. They did the opposite. They, in effect, repealed and repudiated, overruled Chroninger. There is nothing the matter with the selection form and not only did the information be given to the applicant. She was the applicant. And recall further, Your Honors, that the statute provides once given and once written down to the minimum coverage, unless there is a written request to increase it, you don't have to do that again. However, in this case, it was done twice. Recall there was a June 2008 and there was a December 2008. It was done twice. And so there ought to be no claim or complaint that she didn't understand it. She said she understood it. An able cross-examiner could have gotten her to do something. He didn't. And there is no counter-affidavit. Before I sit down, unless you have any questions of me, some lawyers complain that we don't have enough oral arguments. I'm not one of those lawyers. I appreciate the fact that the court has selected this case and given me an opportunity to address the court. Thank you for doing that. And I wasn't trying to make sure that there are three people here who come to work every day. Counsel. In rebuttal, the DeGrant decision was really about a precise issue that came down from the Seventh Circuit, I believe, whether there's an obligation not to offer uninsured voters but underinsured voters coverage. That was the precise issue there, which really isn't the issue here. The point made was that the statute was changed. And the statute, again, I go back to this, this is important statutory coverage. This isn't two people at an antique shop buying something or at a store buying a hot dog or sausage. This is insurance coverage. It's critical to us all. Insurance is a regulated industry for a reason. There's a statute for a reason. Yes, DeGrant. I don't hang my hat on DeGrant. I do not hang my hat on DeGrant. I hang my hat on the fact that this is important coverage that the legislature says it must be in every policy. This policy should have been written with the $500,000 in underinsured voters coverage. Now there is a right to reject if the coverage was described and it was advised as the coverage and it was explained. That wasn't done. That's what this case is about. I'm not hanging my hat on DeGrant. I'm hanging my hat on this court, some of the other districts, have time and time again said this is such important coverage. We're implying this coverage into the policy, the increased limits. Yes, but the record doesn't support your argument that the policy wasn't explained. The record just doesn't support it. The form does. The form is one thing, but the testimony of people is something else. Your Honor, that's true. I think the Norris decision, if we look in there, that risk manager was a sophisticated guy. He said he understood it. He said, I know what I'm doing. It didn't matter. The court said it doesn't matter. The parties cannot waive a statute. I think that's language in the case. The parties cannot waive the statute. Did you see the way the policy is written here? It's underinsured voters and uninsured voters. Basically, it explains what it is and it treats it as one. So it's like, you know, you go to the store and you're going to buy a box of Cheerios. It says Cheerios. You open it up, it's got Cheerios and Corn Flakes. It's consumer fraud. It's deceptive. There's no slippery slope here. This form is gone. But if on the label it says this is going to be Cheerios and Wheaties or whatever it's going to be, you know, it's there, even though it's called Wheaties. Well, if this had said uninsured and underinsured. You guys are making me hungry. So the statute is short. It did do away with Klaminger. But these courts, which are not down at Springfield in the statute, was changed, are here to put life into the statute. And over and over again, there's been renewals that say, well, they stretched to find the coverage. And, again, this is a one-time case, an acumenic policy that opens floodgates. That form is gone because they knew it was wrong. Jim Leitzel, my expert, showed all these forms. This was easy to do. They created the form. This was easy to do. Uninsured motorist coverage, no liability charge coverage. Underinsured motorist coverage, insufficient liability. They didn't do it. Well, isn't that really in the body of the form? It's just kind of the title that you're saying leads to some other suggestion. But the actual description inside that does describe uninsured or, and then it goes on to under. I think that that or is extremely problematic. It doesn't start it as a different one. Uninsured motorist coverage is not uninsured motorist coverage or underinsured motorist coverage. It's uninsured motorist coverage. I mean, coverage can't be one or the other. It's just inherently flawed. Well, they go together. They go together, inextricably intertwined, I think the language is. And we're here requesting the court. You just brought up the fact that this form is gone and that there's a new form. But didn't the trial judge fire that testimony? Yes, he did. Isn't that another issue that's before us? It is another issue. The trial court did bar or strike the testimony of Jim Leitzel, the insurance industry expert. He provided his opinion that in the general consumer transaction with insurance, there must be an explanation, a description that's accurate in order to inform the consumer. He provided examples of other uninsured, underinsured motorist rejection forms. There's dozens of them that were out there that were available that clearly described the coverages discreetly. This is uninsured motorist coverage. This is underinsured motorist coverage. Here's the rates shown below that were available that ASI now uses. So the judge said that that was a violative of the prescription against subsequent remedial measures, and your position is that that goes to feasibility. That's right, Judge. And with regard to Bruce Childs, the ASI vice president of product development, he agrees that there is a duty. I don't think that's statutory interpretation. He says the insured needs to know what this is. Petalis is the gem, the guy who goes back to Merit Insurance. He created this form. He created the inception of this form, the creation of the form, the alteration that was done at ASI. It's relevant material. It's not statutory interpretation. And so quite simply, we contend the statute requires clarity in the explanation. The explanation here is ambiguous and flawed in other manners, and we ask that the court reverse the summary judgment order and apply the coverage of $500,000 in uninsured and underinsured motorist coverage in the ASI file. Thank you, Counsel. Thank you very much. Counsel, it was a pleasure hearing from each of you today. We appreciate your excellent presentations and your briefing, and we'll take the matter under advice. Thank you very much.